# RICE *v.* SCHUTTE.

---

PATENT; INTERFERENCE; SPECIFICATION AND CLAIMS; APPEAL AND ERROR.

1. Where the senior party to an interference submits no testimony in support of an earlier date of conception and reduction to practice than his date of filing; and the junior party proves reduction to practice of the invention disclosed by his application at an earlier date than his opponent's filing date, the junior party is entitled to an award of priority if both devices are embraced within the terms of the issue of the interference.

2. On an appeal in an interference case, this court must assume that the invention of the issue is patentable.

3. In construing claims, the construction of a claim will be narrowed

Opinion of the Court.                          [38 App.

where it is necessary to preserve its validity; but limitations not called for cannot be read into a claim to save it from destruction.

4. In an interference between a patentee and an applicant, who more than two years after filing his application and after his rival's patent had issued, amended his application so as to embrace one of the original claims of the patentee, upon which an interference was thereupon declared, where it appeared that the invention of the issue, involving an improvement in valves, related primarily to a "breakdown connection" and the means for resetting it; that the patentee was the first inventor in the art to use the term "breakdown connection;" that the issue could, with clearness, be read on to his invention, while it could be read on to the applicant's invention only with difficulty, and, in fact, improperly, in the light of the prior art and his own earlier claims; and that confining the applicant's original conception of his invention to what could with propriety be read on to his device, his resetting operation was not materially different from that found in the prior art;—it was *held*, reversing a decision of the Commissioner of Patents, that the patentee was entitled to the award of priority, on the ground that the claims of the issue could not be read on to applicant's invention.

No. 719.   Patent Appeals.   Submitted November 13, 1911.   Decided February 5, 1912.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.          .     *Reversed.* .

The facts are stated in the opinion.

*Mr. Albert G. Davis, Mr. Richard N. Dyer,* and *Mr. Howard M. Morse* for the appellant.

*Mr. Francis T. Chambers* and *Mr. John E. Hubbell* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding. Appellant, Richard H. Rice, filed his application in the Patent Office March 31, 1904, which eventuated into a patent December 11, 1906. Appellee.

Louis Schutte, filed his application July 7, 1904. The single issue involved is stated as follows:

"In a valve of the character described, the combination of a valve, a casing therefor, an emergency device for operating the valve which includes a breakdown connection, and a wheel for opening and closing the valve under normal conditions and for resetting the breakdown connection after the emergency device operates."

The invention is described in the opinion of the Examiner of Interferences as follows: "The invention in issue relates to a valve. Those disclosed in the application of Schutte and the patent to Rice involved herein are structurally specifically different, but both are intended for use in a main pipe which supplies steam to an engine. These valves may be opened and closed solely by a hand wheel in the usual way, and may also be closed quickly and automatically by mechanism, independently of the handwheel. This mechanism is operated by the engine when the latter exceeds a certain speed, thereby tripping the valve and allowing it to close to shut off the supply of steam to the engine."

It is contended by counsel for appellant that the interference arose from the broadening of appellee's original case under disclosures made by the issuance of appellant's patent. The issue before us corresponds to claim 25 of appellant's patent. More than two years after filing his application, and after appellant's patent had issued, appellee amended his application by embracing appellant's original claim 25 as claim 13 of his amended application. On this he requested an interference.

Appellant has submitted no testimony in support of an earlier date for conception and reduction to practice than his date of filing. Hence he must stand or fall upon that date. Appellee offered proof of the reduction to practice of the invention disclosed by his application at an earlier date than that accorded appellant. It must consequently follow that, if both devices are embraced within the terms of the issue, appellee must prevail.

Therefore, the important question presented by this appeal

is whether the claim in issue can be read on to appellee's invention. In other words, is the "breakdown connection" called for by the issue present in the device of appellee? For convenience, we have inserted diagrams showing the portions of the inventions in issue which are material to this inquiry.

*Fig. 4 (Rice)*

It will be observed that appellant's device has a handwheel *c*, which turns upon a stationary screw threaded hub *b*, which is mounted upon the valve casing and valve stem *a*, which operates through the hub freely and independently, and is not screw threaded. The handwheel is connected by toggle links *f* and *g* with a yoke *h*, which is fixedly mounted upon the valve stem, and held against longitudinal movement thereon. The upper links of the toggle have inwardly turned ends *f'* and *g'* pro-

Fig.1 (Schutte)

jecting above the yoke *h*.   Suspended above the yoke is a weight *i*, which, for convenience, surrounds the valve stem, but has no connection therewith.   This weight is operated by a latch *k*, which is connected by a rod *m* with a device, which, when the engine becomes overcharged with steam, sets in operation the trip-latch *k*, disengaging the weight *i*, which slides loosely down the valve stem *a*, striking the ends of the toggles *f'* and *g'*, throwing the toggle links *f* and *g* downward, thereby operating the breakdown connection in such manner as to carry the yoke *h* with the valve stem suddenly downward, thereby closing the valve.

Appellee's device consists of a threaded valve stem *a*, which screws into a hub *b*, the hub *b* operating perpendicularly through the valve casing.   The valve stem is operated by a handwheel *c*, thus enabling the operator to raise and lower the valve. To the hub *b* is attached a hand bar *f*, which is engaged by a trip-latch *g*, to which is connected the rod *h*.   This rod is connected with the engine in such manner that when the engine becomes overcharged with steam, it sets in operation the trip-latch *g*, which disengages the hand bar *f*, allowing the hub *b* to suddenly descend through the valve frame, carrying with it the valve stem, the hand bar *f*, and the handwheel *c*, and thus suddenly closing the valve *d*.

It will be observed that in appellant's device the breakdown connection consists solely in the operation of the toggles *f* and *g*, caused by the sudden dropping of the weight *i*, forcing the valve stem to descend, but leaving the handwheel in stationary position; while in the device of appellee, when set in operation by the emergency device, the stem *a*, hub *b*, hand bar *f*, and handwheel *c* simultaneously descend, closing the valve.

It is contended by appellant that the issue, when construed in the light of the prior art and his specifications and drawings, cannot be read upon appellee's device.   The invention is defined broadly by the issue.   Courts will narrow the construction of a claim where it is necessary to preserve its validity,—and in this proceeding we must assume that the issue is

patentable,—but limitations not called for cannot be read into a claim to save it from destruction. Although the devices of the respective parties are specifically different, they are generically the same. The language of the issue, while broad, we think can be applied specifically. The only question in the case is whether the means for causing the dropping of appellee's device can be termed a "breakdown connection."

The issue relates primarily to the breakdown connection and the means for resetting it. Appellant is the first inventor in the art to use the term "breakdown connection." While not controlling, it is significant. The issue can, with the utmost clearness, be read on to appellant's invention. The breakdown connection consists simply of the yoke, links, and valve stem, and, when the weight, which is part of the means for operating the breakdown connection, has been readjusted into position, the resetting of the links by means of the handwheel is simple. But to read the issue on to appellee's invention is more difficult, and, in fact, improper in the light of the prior art and appellee's earlier claims. He seeks to treat his hub, valve stem, handle bar, handwheel, and trip-latch as constituting his breakdown connection. In his original specification he did not include the trip-latch as part of what he there described, not as a breakdown connection, but as a device for suddenly closing the valve. He described it as follows: "Means for latching the removable part in retracted position, means for releasing said latch and constantly acting means tending to close the pilot and main valves, and through them to draw down the movable part aforesaid when unlatched." It will be observed that he treats the trip-latch as part of the emergency means for setting the closing device in operation, just as appellant treats the trip-latch and weight as means, when operated upon by the emergency device, to set in operation the breakdown connection. We think this is the proper function of the trip-latch. It should be regarded as part of the means to set the breakdown connection in operation, rather than as part of the breakdown connection itself.

Thus confining appellee to his original conception of his

invention, and to what can, with propriety, be read on to his device, his resetting operation is not materially different from that found in the prior art in the inventions of Sampson, Barker, and Fagan. They all reset by the use of the handwheel, the only difference being that the trip-latch in appellee's invention is self-adjusting, while in the others it has to be adjusted by hand. To read the issue, therefore, on to appellee's device, where the question of patentability is exceedingly close, would be to give him something strongly anticipated by the prior art; while, confining it to appellant's invention, we have an easy application of the issue to a device distinctly novel, where the resetting operation is clearly confined to the breakdown connection.

The decision of the Commissioner of Patents is reversed, and the clerk is directed to certify these proceedings as by law required.                                   *Reversed.*